UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SONRISA PROPERTIES, LTD. | § | CASE NO. 10-80012-G3-11 |
| | § | |
| DEBTOR | § | |
| | § | |

### SECOND AMENDED DISCLOSURE STATEMENT REGARDING COMPASS BANK'S SECOND AMENDED PLAN OF LIQUIDATION FOR SONRISA PROPERTIES, LTD.

Date: December 2, 2010

Bruce J. Ruzinsky
Jackson Walker L.L.P.
1401 McKinney, Suite 1900
Houston, Texas  77010
(713) 752-4204 (Telephone)
(713) 481-6262 (Telecopier)
bruzinsky@jw.com (e-mail)

ATTORNEYS FOR COMPASS BANK

1

**IMPORTANT**

**THIS DISCLOSURE STATEMENT IS SUBMITTED TO ALL CREDITORS OF THE DEBTOR ENTITLED TO VOTE ON THE PLAN OF LIQUIDATION HEREIN DESCRIBED AND CONTAINS INFORMATION THAT MAY AFFECT YOUR DECISION TO ACCEPT OR REJECT COMPASS BANK'S PLAN UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE. THIS DISCLOSURE STATEMENT IS INTENDED TO PROVIDE ADEQUATE INFORMATION AS REQUIRED BY THE BANKRUPTCY CODE AS TO COMPASS BANK'S PLAN OF LIQUIDATION. ALL CREDITORS AND INTEREST HOLDERS ARE URGED TO READ THE DISCLOSURE STATEMENT AND ATTACHMENTS WITH CARE AND IN THEIR ENTIRETY.**

**ON _____ , 2010, THE BANKRUPTCY COURT APPROVED THIS DISCLOSURE STATEMENT AS CONTAINING ADEQUATE INFORMATION UNDER SECTION 1125(b) OF THE BANKRUPTCY CODE. SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN OF LIQUIDATION HEREIN DESCRIBED AND ATTACHED AS EXHIBIT A, IS BEING SOUGHT FROM CREDITORS AND INTEREST HOLDERS WHOSE CLAIMS AGAINST, AND INTERESTS IN THE DEBTOR ARE IMPAIRED UNDER THE PLAN OF LIQUIDATION. CREDITORS AND INTEREST HOLDERS ENTITLED TO VOTE ON THE PLAN OF LIQUIDATION ARE URGED TO VOTE IN FAVOR OF THE PLAN AND TO RETURN THE BALLOT INCLUDED WITH THIS DISCLOSURE STATEMENT UPON COMPLETION ADDRESSED TO BRUCE J. RUZINSKY, JACKSON WALKER L.L.P., 1401 MCKINNEY, SUITE 1900, HOUSTON, TEXAS 77010, NOT LATER THAN _____ , 2010**

**I.**

**INTRODUCTION**

**A.      General Information Concerning Second Amended Disclosure Statement and Plan.**

Compass Bank submits this Second Amended Disclosure Statement ("the Disclosure Statement') under Section 1125 of the Bankruptcy Code and Bankruptcy Rule 3016 to all known Creditors and Interest Holders. The purpose of this Disclosure Statement is to disclose information adequate to enable Creditors and Interest Holders who are entitled to vote to arrive at a reasonably informed decision in exercising their rights to vote on the Second Amended Plan of Liquidation (the "Plan"). A summary of the Plan is incorporated herein. Capitalized terms used but not defined in this Disclosure Statement shall have the meanings assigned to them in the Plan or in the Bankruptcy Code and Bankruptcy Rules. All section references in this Disclosure Statement are to the Bankruptcy Code unless otherwise indicated. A copy of the Plan is attached hereto as Exhibit "A".

2

Compass Bank has promulgated the Plan consistent with the provisions of the Bankruptcy Code. The purpose of the Plan is to provide the maximum realistic near term recovery to each Class of Claims and Equity Interests considering the assets and anticipated funds available for distribution to Creditors and Equity Interest Holders. Compass Bank believes that the Plan permits the maximum realistic near term recovery for all classes of Claims and Equity Interests.

This Disclosure Statement is not intended to replace a careful review and analysis of the Plan, including the specific treatment of Claims and Equity Interests under the Plan. It is submitted as an aid and supplement to your review of the Plan to explain the terms of the Plan. Every effort has been made to explain fully various aspects of the Plan as they affect the Creditors and Equity Interest Holders. If any questions arise, Compass Bank urges you to contact its counsel and he will attempt to resolve your questions. You may, of course, wish to consult with your own counsel.

**B.    Disclaimer.**

**NO SOLICITATION OF VOTES HAS BEEN OR MAY BE MADE EXCEPT PURSUANT TO THIS DISCLOSURE STATEMENT AND SECTION 1125 OF THE BANKRUPTCY CODE, AND NO PERSON HAS BEEN AUTHORIZED TO USE ANY INFORMATION TO SOLICIT ACCEPTANCES OR REJECTIONS OF THE PLAN OTHER THAN THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. CREDITORS AND EQUITY INTEREST HOLDERS SHOULD NOT RELY ON ANY INFORMATION RELATING TO THE DEBTOR OTHER THAN THAT CONTAINED IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS AND SCHEDULES ATTACHED.**

**EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS, NO REPRESENTATION CONCERNING THE DEBTOR, ITS ASSETS, PAST OR FUTURE OPERATIONS, OR CONCERNING THE PLAN IS AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT THE DECISION WITH RESPECT TO THE PLAN. ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL TO COMPASS BANK.**

**UNLESS ANOTHER TIME IS SPECIFIED, THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF. NEITHER DELIVERY OF THIS DISCLOSURE STATEMENT NOR ANY EXCHANGE OF RIGHTS MADE CONCERNING THE DISCLOSURE STATEMENT AND THE PLAN SHALL UNDER ANY CIRCUMSTANCES IMPLY THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE OF THE DISCLOSURE STATEMENT AND THE MATERIALS RELIED UPON IN PREPARATION OF THE DISCLOSURE STATEMENT WERE COMPILED.**

WHILE THE INFORMATION PROVIDED HEREIN IS BELIEVED RELIABLE, COMPASS BANK HAS NOT UNDERTAKEN TO VERIFY OR INVESTIGATE SUCH INFORMATION, AND MAKES NO REPRESENTATIONS AS TO THE ACCURACY OR COMPLETENESS OF THE INFORMATION.

DISTRIBUTION OF THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED AS ANY REPRESENTATION OR WARRANTY AT ALL, EITHER EXPRESS OR IMPLIED, BY COMPASS BANK OR ANYONE ACTING FOR OR ON BEHALF OF COMPASS BANK THAT THE PLAN IS FREE FROM RISK, THAT THE APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR A GUARANTEE OF THE ACCURACY OF THE COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT AND THE PLAN ATTACHED SHOULD BE READ IN THEIR ENTIRETY BEFORE VOTING ON THE PLAN. FOR THE CONVENIENCE OF HOLDERS OF CLAIMS AND EQUITY INTERESTS, THE TERMS OF THE PLAN ARE SUMMARIZED IN THIS DISCLOSURE STATEMENT, BUT ALL SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN, WHICH CONTROLS IN CASE OF ANY INCONSISTENCY.

C.      Answers to Commonly Asked Questions.

As part of Compass Bank's effort to inform Creditors and Interest Holders regarding the Plan and the Plan confirmation process, the following summary provides answers to questions which parties who receive a disclosure statement often ask.

**Who is the Debtor?**

The Debtor is Sonrisa Properties, Ltd., a Texas Limited Partnership. The Debtor was formed for the purpose of owning, developing, and selling unimproved real property. The Debtor currently owns approximately 4 acres of unimproved real property in League City, Galveston County, Texas located on/near the Gulf Freeway near the FM 646 intersection.

**When did the Debtor file bankruptcy?**

The Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the Bankruptcy Code on January 4, 2010 (the "Petition Date").

**Why did the Debtor file bankruptcy?**

The bankruptcy was filed to stop its largest secured creditor, Compass Bank, from foreclosing in January 2010.

**What is a chapter 11 bankruptcy?**

Chapter 11 is a chapter of the Bankruptcy Code that allows financially distressed businesses to reorganize their debts and/or liquidate their assets. The commencement of a chapter 11 case creates an estate containing all the legal and equitable interests of the Debtor in property as of the date the petition is filed. Sections 1101, 1107 and 1108 of the Bankruptcy Code provide that a debtor may continue to operate the debtor's business as a debtor-in-possession. The Debtor remains in possession of its properties and assets. When a chapter 11 bankruptcy case is filed, creditors are prohibited from attempting to collect debts or enforce liens against the Debtor or its assets without first obtaining approval from the Bankruptcy Court.

**Has a Creditors' Committee been formed?**

No. The United States Trustee has been unable to solicit sufficient interest to appoint a proper Committee as contemplated by 11 U.S.C. Section 1102. On February 10, 2010, the United States Trustee filed its Notice of Inability to Appoint a Creditors' Committee.

**If the Plan governs how my claim is treated, what is this Disclosure Statement?**

The Bankruptcy Code requires that a plan proponent, Compass Bank in this case, solicit acceptances and rejections of a proposed plan from creditors and shareholders whose claims and interests are impaired before the plan can be confirmed by the Bankruptcy Court. Before a plan proponent may solicit acceptances of a plan however, the Bankruptcy Court must approve a disclosure statement and determine that the disclosure statement contains information adequate to allow creditors and shareholders to make an informed judgment about the plan. The disclosure statement and plan are formally distributed after the Bankruptcy Court approves the disclosure statement. At that time, creditors and shareholders also receive a voting ballot with the disclosure statement and plan.

**Has this Disclosure Statement been approved by the Bankruptcy Court?**

On _____ , 2010, the Bankruptcy Court approved this Disclosure Statement as containing adequate information. "Adequate information" means information of a kind, and in sufficient detail, as far as is practicable considering the nature and history of the Debtor and the condition of the Debtor's books and records to enable a hypothetical reasonable investor typical of holders of claims or interest of the relevant classes to make an informed judgment whether to vote to accept or reject the Plan. The Bankruptcy Court's approval of this Disclosure Statement does not constitute an endorsement by the Court of any of the representations contained in either the Disclosure Statement or the Plan.

**Do I have to attend the hearing on the Disclosure Statement and Plan?**

If you do not believe that the Disclosure Statement contains adequate information or if you believe that there is a problem with Compass Bank's Plan and you want to either get additional information from Compass Bank in order to object to the Plan, you need to file a

5943559v.4 100456/00387

written objection stating your position on or before the deadlines imposed by the Court and come to the hearing. Compass Bank's counsel can discuss your concerns from Compass Bank's perspective, but cannot give you legal advice and you may wish to consult your own counsel.

### How do I determine how my Claim or Interest is classified?

To determine the classification of your Claim, you must first determine the nature of that claim or interest. Under the Plan, claims and interests are classified into a series of Classes. The pertinent sections of the Disclosure Statement and Plan disclose, among other things, the members of each particular Class, the size of each Class, what you will receive for your Claim or Equity Interest if the Plan is confirmed, and when you will receive such consideration if the Plan is confirmed.

### Why is confirmation of the Plan important?

The Bankruptcy Court's confirmation of the Plan is a condition to Compass Bank's right to have carried out the treatment of creditors and shareholders under the Plan. Unless the Plan is confirmed, and any other conditions to confirmation or to the effectiveness of the Plan are satisfied, it is legally prohibited for Claims or Equity Interests to be satisfied as provided in the Plan.

### What is necessary to confirm the Plan?

Under applicable provisions of the Bankruptcy Code, confirmation of the Plan requires among other things, that at least one class of impaired Claims vote to accept the Plan.

Acceptances by a class of claims means that at least two-thirds in the total dollar amount and more than one-half in number of the allowed claims actually voting in the class vote in favor of the Plan. Because only those claims or interest who vote on a Plan will be counted for purposes of determining acceptance or rejection of Plan by an impaired class, a Plan can be approved with the affirmative vote of members of an impaired class who own less than two-thirds in amount and one-half in number of the claims. Besides acceptance of the Plan by each class of impaired creditors or interests, a Bankruptcy Court also must fine that a plan meets a number of statutory tests before it may confirm the Plan. The requirements and statutory tests generally are designed to protect the interests of holders of impaired claims or interests who do not vote to accept a plan but who will nonetheless be bound by the plan's provisions if a Bankruptcy Court confirms a plan. If one or more classes vote to reject a plan, a debtor may still request that the Bankruptcy Court confirm a plan under Section 1129(b) of the Bankruptcy Code. In this case, a plan proponent must demonstrate that the Plan does not discriminate unfairly, and is fair and equitable with respect to each class of Claims or Interests that are impaired under and have not accepted the Plan.  This method of confirming a Plan, is called a "cramdown".  In addition to the statutory requirements imposed by the Bankruptcy Code, the Plan itself also provides for certain conditions that must be satisfied as conditions to confirmation.  The Plan of the Debtor is not dependant on confirmation of the Plan of Sonrisa Realty Partners, Ltd.

6

**When is the deadline for returning my ballot?**

The Bankruptcy Court will direct that, to be counted for voting purposes, your ballot must be received by a date set at a later time. This date will be set forth in the Order Approving Disclosure Statement which will be sent to you.

**IT IS IMPORTANT THAT ALL IMPAIRED CREDITORS AND INTEREST HOLDERS VOTE ON THE PLAN. COMPASS BANK BELIEVES THAT THE PLAN PROVIDES THE BEST POSSIBLE REALISTIC NEAR-TERM RECOVERY TO CREDITORS. COMPASS BANK THEREFORE BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND RECOMMENDS THAT ALL IMPAIRED CREDITORS AND INTEREST HOLDERS VOTE TO ACCEPT THE PLAN.**

## II.

## OVERVIEW OF THE PLAN

An overview of the Plan is set forth below. This overview is qualified in its entirety by reference to the Plan. If the Court confirms the Plan, and in the absence of any applicable stay, and all other conditions set forth in the Plan are satisfied, the Plan will take effect on the Effective Date, i.e., on the first business day fourteen (14) days after the date on which the Confirmation Order becomes a Final Order (unless a stay of the Confirmation Order pending appeal is granted, in which case the Effective Date will be the first business day after the stay is terminated).

The Plan provides for a sale of the Property via an auction to take place within 120 days of the Effective Date of the Plan.  The Auction will be conducted by Auction Resolutions dba Tranzon Auction Resolutions ("TAR") is a Texas limited liability company based in Cypress, Texas. TAR is an independently owned and operated member company of Tranzon, LLC (collectively "Tranzon") whose corporate headquarters is in Portland, Maine. TAR's geographical responsibilities include the Greater Houston MSA, Southeast Texas, South Texas and Louisiana.

TAR is equally owned by Dwight D. Toney, CEO, and Kelly D. Toney, President. Dwight and Kelly founded the business in August 1997 in Houston, Texas. Kelly Toney is a licensed Real Estate Broker and Auctioneer in Texas and Louisiana. Dwight Toney is also a licensed Real Estate Agent and Auctioneer in Texas and Louisiana. Excluding the owners, TAR has a support staff of seven people in its Cypress office, of which two are licensed Texas Real Estate Agents. Dwight and Kelly are officers of the company with the authority to negotiate and contract TAR.

As a member company of Tranzon, TAR benefits from the partnership and resources of its nationwide partners. Member Company's of Tranzon, LLC are licensed (brokerage/auctioneer) in 49 states and have over 110 team members collectively across 33 offices. Member Companies are principals in Tranzon, LLC and have an average of 15 years

experience in the auction business and over 750 years of combined experience. The national organization has served more than 100 institutional and financial organizations in the disposition of commercial and residential real estate. Tranzon has performed real estate auction services for the following types of clients: Financial Institutions, CMBS Servicers; Residential Servicers; Law Firms; Bankruptcy Trustees and Estates; Fortune 100 companies; Investment Funds/Partnerships; Developers; Private Individuals; and State and Federal Governments (i.e. RTC, FDIC). TAR has performed auctions in connection with bankruptcy cases pending in the United States District Court for the Southern District of Texas. By way of example, TAR performed auctions on behalf of Randy Williams, Plan Agent for First Capital Interests, Blue Moon and Forty-Eight Hour Funding. TAR was engaged to evaluate over 400 ORE properties in order to prepare a comprehensive liquidation plan. The plan culminated into a series of four ballroom auctions over a two-year period. The U.S. Bankruptcy Court for the Southern District of Texas along with the Internal Revenue Service (the primary creditor) approved the auction plan. Ultimately, over 200 commercial and residential properties were identified as candidates and were sold at auction for over $6,000,000.

Collectively, Tranzon reports that it has sold over $1.5 billion of real estate assets since 2001 and over $123 million year to date. Detailed information about Tranzon can be found at their website: www.tranzon.com

The Property will be sold at Auction via one or more cash sales and/or a credit bid sale. Net Sale Proceeds will be distributed by the Disbursing Agent in accordance with the Plan. The Disbursing Agent will also liquidate any remaining assets and distribute Other Liquidation Proceeds and Pre-Confirmation Remaining Sale Proceeds in accordance with the Plan.

## III.

## SOURCE OF INFORMATION

The financial information contained in this Disclosure Statement was compiled primarily from The Sonrisa Partners, Ltd. Disclosure Statement (Docket No.28), filings in the bankruptcy cases, the records of Compass Bank and the records in the Bankruptcy Case.

## IV.

## THE DEBTOR

### A.      Description of the Debtor and Events Leading to the Bankruptcy.

The Debtor is a Texas limited partnership created under the laws of the State of Texas on or about October 22, 2001 pursuant to an Agreement and Certificate of Limited Partnership. The general partner is Sonrisa Properties Management, Inc., a Texas corporation. The Debtor was formed for the purpose of owning, developing, and selling unimproved real property. The Debtor owns approximately 4 acres of unimproved real property in League City, Galveston County, Texas located on/near the Gulf Freeway at the FM 646 intersection.

8

On February 15, 2007, the Debtor and Sonrisa Realty Partners, Ltd., jointly and severally executed a promissory note in the amount of $8,200,000.00 payable to Texas State Bank (nka Compass Bank). The note is an interest bearing note, with interest due monthly, and a balloon payment at the expiration of two years. The note is secured by a first lien deed of trust covering property located in Galveston County, Texas ("Real Estate") along with an assignment of contracts. The Deed of Trust is cross-collateralized with property consisting of approximately 97.5 acres owned by Sonrisa Realty Partners, Ltd. and approximately 4 acres (originally 22.97 acres) owned by the Debtor.

The Debtor endeavored to develop the Real Estate and to negotiate necessary infrastructure improvements to make the Real Estate more marketable. This involved extensive negotiations with the Management District in League City, Galveston County, and the Texas Department of Transportation (TXDOT). The development plan included installation of utilities including storm water detention and retention facilities, and TXDOT approval of a ramp reversal project, ring road/utility construction to facilitate retail/hotel/restaurant development along 1-45 feeder, and to construct Brookport Drive from Big League Dreams Drive South to FM 646/1-45 intersection. In 2008, Texas State Bank merged into and became part of Compass Bank. The Debtor made certain proposals to Compass Bank to renew the loan. However, those proposals were rejected and Compass Bank initiated foreclosure proceedings in June 2009. The Debtor continued its attempts to restructure/modify the loan but was unsuccessful in its efforts. Compass Bank posted the Real Estate for foreclosure on multiple occasions in the second half of 2009, but passed on the postings. The Debtor stayed the January 2010 scheduled foreclosure by filing for Chapter 11 bankruptcy protection.

The last appraisal of the Real Estate (including approximately 21 acres since sold) prepared by Greenbriar Appraisal Company for Compass Bank and effective as of November 9, 2009, reflects a real estate market value of $19,700,000.00. At the inception of the Debtor's Bankruptcy Case, Compass Bank was owed over $8,700,000.00. Today, Compass Bank is owed a principal balance of approximately $7,100,000.00 plus accruing interest exceeding $800,000.00. Compass Bank appears to be oversecured. The amount of the indebtedness to Compass Bank has been reduced through Sonrisa Realty Partners, Ltd.'s sale of 0.7675 acres and the Debtor's sale of 17.849 acres to Galveston County, for a purchase price of $2,250,000.00. This sale was approved by the Bankruptcy Court and resulted in a principal reduction of $750,000.00 to the indebtedness owed to Compass Bank.  Sonrisa Realty Partners, Ltd. further sold 1.695 acres to APAAR Hotel, LLC, for a purchase price of $553,750,00. The Bankruptcy Court approved the sale which resulted in a principal reduction of $250,000.00 to the indebtedness owed to Compass Bank. Since the bankruptcy filing and as a result of these sales, Compass Bank has been paid $1,000,000.00. The sales also generated additional funds for infrastructure development costs.

**B.      Debtor's Financial Information.**

The Debtor filed monthly operating reports with the Bankruptcy Court, although the reports for January 2010 through September 1, 2010 were all filed in October 2010. The source of the financial information provided therein is from Randal M. Hall, the manager of the

Debtor's General Partner.  According to the Debtor, the accounting process used by the Debtor is a modified cash basis.

The Debtor's tax returns are current through the tax year ending 2008. During the year 2008, the Debtor reported gross income of $153.00.

## C.   Debtor's Assets.

The Debtor filed its Schedules of Assets and Liabilities ("Schedules") on January 14, 2010. Schedule B (response to question No. 14) was amended by the Debtor on February 25, 2010.  Schedule "B" (response to question No. 21) was amended by the Debtor on April 15, 2010 to assert a contingent and unliquidated claim against Compass Bank for alleged breach of promise, misrepresentation, detrimental reliance, and reformation of promissory note dated February 15, 2007. No value was assigned to this alleged claim, and Compass Bank believes the alleged claim is bogus. Schedule "A" and the Amended Schedules "B" of the Bankruptcy Schedules contain a listing of the Debtor's assets together with the Debtor's estimate of fair market value of those assets. The Debtor scheduled and valued its real property (Schedule "A") at $21,000,000.00 and its personal property at $98,818.90 (Second Amended Schedule "B").  A description of the real and personal property owned by the Debtor at the time of the Petition Date is fully described in **Exhibit "B"** attached hereto.

During the course of its Bankruptcy Case and after the filing of the attached Schedule "A" the Court approved a sale of property to Galveston County. Pursuant to the terms of the sale, the Debtor sold 17.849 acres along with 0.7675 acres owned by Sonrisa Realty Partners, Ltd. Sonrisa Realty Properties, Ltd. further obtained Court approval to sell 1.695 acres to **APAAR** Hotel, LLC. These sales reduced the property scheduled on Schedule "A".

On January 12, 2010, Compass Bank filed a lawsuit against Sonrisa Development, LLC, Sonrisa Realty GP, LLC, Sonrisa Properties Management, Inc. (the Debtor's general partner), and Randal M. Hall (the president of the Debtor's General Partner and an individual guarantor), Case No. H-10-107 in Federal District Court, Southern District of Texas, Houston Division, based on the unpaid indebtedness owed to Compass Bank by the Debtor and Sonrisa Realty Partners, Ltd. Summary Judgment was granted in favor of Compass Bank on May 28, 2010. The Judgment has not been appealed and the time for filing an appeal has expired. Compass Bank filed a motion in the Bankruptcy Court on September 15, 2010 requesting that the Debtor be compelled to amend Schedule B to conform with the District Court's ruling or alternatively, that Amended Schedule B be stricken. Compass Bank believes that the Summary Judgment disposes of the Debtor's asserted claims set forth in the response to question 21 of Amended Schedule "B". The Debtor believes otherwise and has filed an objection to that motion. By order entered October 25, 2010, the Bankruptcy Court denied the motion of Compass Bank.

## D.   Liabilities and Claims Against the Debtor.

The Debtor's Schedules "D", "E" and "F" as filed on January 14, 2010 and as attached hereto as **Exhibit "C"** contain a detailed listing of creditors, together with the Debtor's

10

estimate of the amount of claims. To date, these Schedules have not been amended. The Schedules organize creditors into three groupings: Schedule D-Secured Claims; Schedule E-Unsecured Priority Claims; and Schedule F-Unsecured Nonpriority General Claims. A listing, or in certain cases a summary estimate, of the Claims in each Class under the Plan is set forth below in connection with the description of the treatment of those Claims under the Plan.

**E.      Management of the Debtor.**

The Debtor is managed by Randal M. Hall, the president of the general partner, Sonrisa Properties Management, Inc.

**F.      Significant Events During the Bankruptcy Case.**

On March 24, 2010, the Debtor filed its emergency motion seeking authority from the Bankruptcy Court to sell free and clear of liens, claims, and encumbrances 17.849 acres out of 18.615 acres to Galveston County for $2,250,000.00 (the total sale price for the full 18.615 acres). The Court held a hearing on March 31, 2010 and authorized the sale. An order was entered authorizing the Debtor to pay taxes and MUD claims to Galveston County, assessments to Bay Colony West HOA, taxes to Dickinson ISD, closing costs, and a commission to the broker. The order further provided that $750,000,000 of the sale proceeds be paid to Compass Bank and applied as a principal reduction to the indebtedness owed to Compass Bank. The remaining net sale proceeds have been placed in the debtor-in-possession bank account to be used for the development of the property.

Also on March 24, 2010, the Debtor filed its Motion for Authority to Convert 1% General Partner Interest to a 15% Limited Partner Interest in HSM Sonrisa, Ltd.  That motion states it was filed to prevent the dissolution of HSM Sonrisa Ltd.  After the Debtor corrected the record to reflect that the 1% general partner interest was being converted to a 1% limited partner interest, the Bankruptcy Court approved that motion on June 1, 2010.

On April 2, 2010, the Debtor filed a disclosure statement and plan. A hearing on the Disclosure Statement was held on June 22, 2010. The Debtor and counsel for Compass Bank announced at the hearing that negotiations were ongoing with Compass Bank and the Disclosure Statement could not be approved in its present form.

On September 15, 2010 Compass Bank filed its Motion to Compel Debtor to Amend Schedule B to conform with U.S. District Court Ruling, or Strike Amended Schedule B.  That motion concerns the Debtor's asserted claim against Compass Bank as set forth in an amended schedule B filed on April 15, 2010.  The Debtor has filed an objection to the motion to compel. By order entered October 25, 2010, the Bankruptcy Court denied the motion of Compass Bank.

On November 3, 2010, the Debtor filed its First Amended Disclosure Statement and First Amended Chapter 11 Plan..

**G.      Pending Litigation.**

Affinity Bayview I, Ltd. filed a lawsuit against the Debtor in the Tenth District Court of Galveston County, Texas alleging a breach of contract claim.  The matter has been stayed because of the bankruptcy filing.

**V.**

**SUMMARY OF THE PLAN**

**A.      Auction Sale of Property**

The Property will be sold at Auction via one or more cash sales and/or credit bid sales. A copy of the Auction Procedures is attached as Exhibit "A" to the Plan.  If any parcel of Property owned by the Debtor is sold jointly with a parcel owned by Sonrisa Realty Partners, Ltd., the premium paid for such combined sale shall be allocated ratably to each seller based on the last highest bids for each parcel individually.  Compass Bank will be allowed to credit bid at the sale which means that Compass Bank can bid the indebtedness owed to it the same as if it was bidding with cash.  Compass Bank contends that the credit bidding will have no net effect on creditors.  If a third party had bid cash in an amount equal to the amount of the credit bid, the creditors would not receive the proceeds from that sale as they would be paid to Compass Bank in partial or total satisfaction of its lien.

The auctioneer will be paid a 10% Buyer's premium added to each successful bid.  If any sale does not close due to the failure of a successful bidder to perform, the auctioneer will retain 30% of the earnest money.  If the credit bid of Compass Bank is the high bid on any tract, the auctioneer will be paid one-half of one percent of the high credit bid as a fee by Compass Bank  Net Sale Proceeds will be distributed by the Disbursing Agent in accordance with the Plan.

The Disbursing Agent will also liquidate any remaining assets, and distribute Other Liquidation Proceeds and Pre-Confirmation Remaining Sale Proceeds in accordance with the Plan.  The Disbursing Agent shall be Elizabeth Guffy, Attorney at Law, 711 Louisiana, Suite 3100, Houston, Texas  77002, 713-227-0095, who shall receive a total of $25,000 as a flat fee for serving as the Disbursing Agent for the Debtor and Sonrisa Realty Partners, Ltd. which shall be paid from sales proceeds of the property otherwise payable to Compass Bank.

Any assets of the Debtor other than the MUD receivables and the Property shall be vested in the Debtor, although Compass Bank does not believe that any of such remaining assets are significant.

Compass Bank contends that all creditors should be paid in full under the Plan based on the Debtor's valuation of the Property.  Compass Bank further contends that unsecured creditors will be paid partially or in full much sooner under the plan of Compass Bank than under the plan proposed by the Debtor.  The Debtor disputes this assertion.

12

Under the Plan of Compass Bank, the Unsecured Creditors would be paid post-petition interest from the Petition Date until the date of payment at the Federal Judgment Interest Rate. Compass Bank under its Plan guarantees that the Unsecured Creditors (excluding Compass Bank to the extent it is an Unsecured Creditor) would receive a pro rata General Unsecured Minimum Payment, and Compass Bank projects that each Unsecured Creditor would receive at least 10% of its Allowed Claim under the Plan.  The payment of interest and the General Unsecured Minimum Payment would be paid from the sales proceeds of the Property.  If there is insufficient cash sales proceeds to fund these payments, they would be paid directly by Compass Bank.

## B.    Classification and Treatment of Claims.

The following summary of certain provisions of the Plan does not purport to be complete. The provisions of the Plan, including definitions of certain terms which are incorporated by reference as a part of the summary, are terms which are qualified in their entirety by such reference.

The Bankruptcy Code requires that claims be treated as either impaired or as unimpaired under the Plan. Unimpaired claims are claims that are satisfied in accordance with non-bankruptcy law. Impaired claims are claims that are satisfied in a manner other than in accordance with non-bankruptcy law.

The Plan establishes six (6) classes of Claims and Equity Interests.  Such classes of Claims and Equity Interests are outlined below.

### Class I - Administrative Claims - Unimpaired

Class 1 consists of all Administrative Claims against the Debtor that become Allowed Claims. Allowed Administrative Claims include the following claims:

### U.S. Trustee Fees

The U.S. Trustee Fees are current, and all fees accruing prior to and after confirmation will be paid in full prior to or on the Effective Date.

### Professional Fees:

Claims of Debtor's counsel, Karen R. Emmott, for representing the Debtor in this matter under Section 507(a)(1). Karen R. Emmott has been paid a retainer of $5,127.00.  She estimates that her total fees will be approximately $40,000.00, which will be subject to Bankruptcy Court approval.

The Administrative Claims of the foregoing professional(s) will be paid in cash, in full, on the Effective Date, or as soon as practicable after such claims become Allowed Claims if the date of allowance is later than the Effective Date.

13

By order entered October 28, 2010, the Bankruptcy Court approved the retention of DRDA PLLC as the accountants for the Debtor.  DRDA PLLC will be entitled to fees subject to Bankruptcy Court approval.  At this time it is unclear how much in fees DRDA PLLC will request.

Any and all requests for allowance of an Administrative Claim (including Professional Fee Claims) must be filed with the Bankruptcy Court and served on Compass Bank, the Debtor and the U.S. Trustee within thirty (30) days following the Effective Date. Any Class 1 Claims not filed within such time period will be forever barred and will not be entitled to receive any distribution of payment under the Plan.

### Class 2 - Priority Tax Claims - Impaired

Class 2 consists of all Priority Tax Claims against the Debtor that are or become Allowed Claims. Class 2 is impaired. Each holder of an Allowed Class 2 Priority Tax Claim will receive (in full satisfaction of such Allowed Claim, in cash), its pro-rata share of Net Sale Proceeds and Pre-Confirmation Remaining Sale Proceeds, all after payment in full of Allowed Claims in Classes 1, 3 and 4; provided however the distribution to holders of Allowed Class 2 Claims shall in the aggregate be no less then the Unsecured Priority Tax Minimum Payment.

### Class 3 - Secured Ad Valorem Tax Claims – Impaired

Class 3 consists of the Secured Claims of the taxing authorities, secured by real property interests. The tax claims for years prior to 2010 were paid at the closing relating to the sale to Galveston County and to APAAR. Taxes for 2010 will not be assessed until October 2010 and are not yet past due.

### Class 4 - Secured Claim of Compass Bank – Impaired

Class 4 consists of the Allowed Compass Bank Secured Claim, which is Allowed under the Plan amount of $7,664,457.42 plus post-petition interest, costs and reasonable attorneys fees pursuant to 11 U.S.C. § 506(b).  The holder of the Allowed Class 4 Claim will receive (in full satisfaction of such Allowed Claim): (a) in the event of a cash sale - - all of the Net Sale Proceeds and Pre-Confirmation Remaining Sale Proceeds less (i) an amount equal to all Allowed Class 1 Claims, (ii) an amount equal to all Allowed Class 3 Claims, and (iii) an amount equal to the General Unsecured Minimum Payment, the Unsecured Priority Tax Minimum Payment, and the Disbursing Agent Reserve; (b) in the event of a credit bid sale - - any portion of the Property sold via credit bid, plus the Pre-Confirmation Remaining Sale Proceeds less (i), (ii) and (iii) above.

### Class 5 - General Unsecured Non-Priority Claims – Impaired

The Debtor has the following general unsecured Creditors:

| | |
|---|---|
| **Affinity Bayview I, Ltd.** | **$ 125,176.47 (disputed)** |
| **E. John Justema** | **$ 24,542.50** |
| **Greer Herz & Adams, LLP** | **$ 87,639.81** |
| **Halff Associates, Inc.** | **$  3,240.00** |
| **HSM Sonrisa, Ltd.** | **$ 97,828.54** |
| **Intere Direct USA, Ltd.** | **$  3,187.50** |
| **OE Development Partners, Ltd.** | **$  2,872.50** |
| **Total** | **$344,487.32** |

Notwithstanding anything in this Plan to the contrary, (1) Compass Bank shall have an Allowed Unsecured Claim to the extent that Net Sale Proceeds, together with the Pre-Confirmation Remaining Sale Proceeds, is less then the Allowed Compass Bank Secured Claim, and (2) only in the event Class 5 accepts the Plan, any Allowed Unsecured Claim of Compass Bank shall be subordinate to any other allowed Class 5 Unsecured Claims. Class 5 is impaired. Each holder of an Allowed Claim in Class 5 shall receive (in full satisfaction of such Allowed Claim) its pro-rata share of (a) Net Sale Proceeds after payment in full of Allowed Claims in Classes 1-4 and funding of the Disbursing Agent Reserve, and (b) Other Liquidation Proceeds plus interest at the Federal Judgment Interest Rate from the Petition Date until the date of payment; provided however the distribution to holders of Allowed Class 5 Claims shall in the aggregate be no less than (i) the General Unsecured Minimum Payment, and (ii) any portion of the Unsecured Priority Tax Minimum Payment remaining after payment of Allowed Class 2 Claims.   The Federal Judgment Rate in effect on November 30, 2010 was .27%.

### Class 6 - Equity Interests – Impaired

The holders of Equity Interests as of immediately prior to the Effective Date shall not receive any payments under this Plan unless and until Creditors in Classes 1 through 5 are paid in full the Allowed amounts of their Claims.

### C.      Treatment of Executory Contracts and Unexpired Leases.

On the Effective Date, all executory contracts and unexpired leases not previously assumed or rejected shall automatically be rejected.  All parties to any such contract or lease rejected will have thirty (30) days from the rejection to file a Proof of Claim for damages, if any, resulting from rejection.  Such claim will be subject to any limitation imposed by the Bankruptcy Code and all other applicable laws, rules and regulations.

## D.     Absolute Priority Rule.

Simply characterized, the absolute priority rule set forth in Section 1129 (b)(2)(B) of the Bankruptcy Code requires that confirmation obtained by "cramdown" meet an either/or test. Either (1) the members of each dissenting impaired class of unsecured claims must receive property of a value, as of the Effective Date of the Plan, equal in amount to such class members allowed claim; or (2) the holders of claims and interest that are junior to each dissenting impaired class of claims must not receive or retain any property under the Plan of Reorganization on account of such junior interest. The absolute priority rule applies only in cases where a class of claims is both impaired and does not accept the Plan. Thus, the absolute priority rule does not apply to all classes of claims but only to the dissenting class and classes junior to the dissenting class.

## E.     Cramdown.

In the event that any impaired class of Claims and Equity Interests does not accept the Plan, the Bankruptcy Court may still confirm the Plan if, as to each impaired class which has not accepted the Plan, the Plan does not discriminate unfairly and is "fair and equitable." A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives more that it is legally entitled to receive for its claims or equity interests. If any impaired class of unsecured Claims fails to accept the Plan in accordance with Section 1126 of the Bankruptcy Code, Compass Bank will request the Bankruptcy Court to confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code and hereby will move the Court for confirmation in accordance therewith and specifically pleads that the Plan is fair and equitable to such class.

## VI.

## LIQUIDATION ANALYSIS

The Plan affords holders of Allowed Claims the potential for the maximum realistic near term recovery on the Debtor's assets and, therefore, is in the best interests of such holders. If a conversion of the Bankruptcy Case were to occur, then a trustee would be elected or appointed to liquidate the Debtor's assets.

It is Compass Bank's belief that the unsecured Creditors would receive less in a chapter 7 liquidation because (a) the fees charged by a chapter 7 trustee and any professionals retained by the trustee will impose substantial administrative costs on the Debtor's estate that would not be incurred under the Plan, and (b) unsecured Creditors would certainly not get the benefit of subordination of any unsecured deficiency claim of Compass Bank (as they would under the Plan if Class 5 accepts the Plan).

Further, there is no assurance as to when distributions would occur in a chapter 7 liquidation.

Thus, Compass Bank believes that confirmation of the Plan is preferable to the alternatives because the Plan should maximize the realistic near term recovery to Creditors,

ensure resolution of this chapter 11 case and provide for distributions to Creditors in accordance with the Bankruptcy Code.

## VII.

## PREFERENCES

Under the Bankruptcy Code, a bankruptcy court may order recovery of certain preferential transfers of property, including cash, made while a debtor was insolvent during the 90 days immediately prior to the filing of its bankruptcy petition with respect to pre-existing debts, to the extent the transferee received more than it would have in respect of the pre-existing debt had the debtor been liquidated under chapter 7 of the Bankruptcy Code. In the case of "insiders", the Bankruptcy Code provides for a one year preference period. There are certain defenses to such recoveries. Transfers made in the ordinary course of the debtor's and transferee's business according to the ordinary business terms in respect of debts less than 90 days before the filing of a bankruptcy are not recoverable. Additionally, if the transferee extended credit subsequent to the transfer (and prior to the commencement of the bankruptcy case), such extension of credit may constitute a defense to recover, to the extent of any new value, against an otherwise recoverable transfer of property. If a transfer is recovered by the debtor, the transferee has an unsecured claim against the debtor to the extent of the recovery. In this case, Compass Bank is not aware of any recoverable payments within the preference periods. The Debtor has also represented that it is not aware of any recoverable payments within the preference period. Therefore, there is no basis to pursue preference actions.

## VIII.

## FRAUDULENT TRANSFERS

Under the Bankruptcy Code and various state laws, a debtor may recover certain transfers of property, including the granting of a security interest in property, made (a) while insolvent or near insolvent or which rendered the debtor insolvent, and for less then reasonably equivalent value, or (b) with actual intent to hinder, delay or defraud creditors. Compass Bank is not aware of any fraudulent transfers at this time. The Debtor has also represented that it is not aware of any fraudulent transfers. Therefore, there is no basis to pursuing any fraudulent conveyance actions.

## IX.

## FEASIBILITY OF PLAN AND RISK

The Plan is to be implemented, if accepted and approved by the Bankruptcy Court, from the sales of the Property and the liquidation of any other assets. The feasibility of the Plan is dependent on the sale of the Property at the Auction. The risk to Creditors, if any, is dependent upon Tranzon's ability to sell the Property at the Auction.

5943559v.4 100456/00387

# X.

## ALTERNATIVES TO PLAN

The alternatives to the Plan are conversion, (as discussed above), dismissal, or the Debtor plan of reorganization. Dismissal would place the Debtor in the position it was in prior to the filing of the Bankruptcy Case. Compass Bank believes the Debtor's plan of reorganization is not confirmable.

# XI.

## EFFECT OF CONFIRMATION

Upon the Effective Date:

1.      The provisions of the Plan shall bind the Debtor and any Creditor and Equity Interest holder, whether or not they have accepted the Plan.

2.      Except as otherwise provided in the Plan, all property of the Debtor and of the Estate shall vest in the Debtor free and clear of liens, claims and encumbrances, except as otherwise provided in the Plan.

# X11.

## BAR DATE FOR FILING PROOFS OF CLAIM

Pursuant to Bankruptcy Local Rule 3003, any creditor desiring to receive a distribution under provisions of this Plan, whose claim is not evidenced by a Court-authorized order or the Debtor's schedules, must file a proof of claim or request for compensation with the Bankruptcy Court within ninety (90) days after the first date set for the meeting of the creditors. Unless a claim is listed as disputed, contingent or unliquidated, each secured Creditor's claim will be allowed in the absence of (a) filing of a proof of claim in a different amount or status on or before the last day fixed for filing claims, or (b) a timely filed objection to the Claim. Claims listed as disputed, contingent or unliquidated will not be allowed unless a proof of Claim with all supporting documents was filed or the claim was scheduled by the Debtor. In the event a Creditor has filed a proof of Claim in these proceedings with which any party in interest disagrees, such party in interest shall file an objection to said Claim not later than thirty (30) days after the Effective Date of the Plan.

Any proof of Claim which is not or has not been timely filed or scheduled shall be of no force and effect. No distribution will be made to any Creditor that has not timely complied with this provision.

18

## XIII.

### MODIFICATION OF DISCLOSURE STATEMENT

Compass Bank may propose amendments to or modification of this Disclosure statement at any time prior to confirmation, without leave of the Bankruptcy Court. After confirmation, Compass Bank may, with approval of the Bankruptcy Court, so long as it does not materially or adversely affect the interest of the Creditors or other parties-in-interest as set forth herein, remedy any defect or omission, reconcile any inconsistencies in this Disclosure Statement, or in the order approving this Disclosure Statement, in such a manner as may be necessary to carry out the purposes and intent of this Disclosure Statement.

## XIV.

### PAYMENT OF UNITED STATES TRUSTEE QUARTERLY FEES

The Disbursing Agent shall timely pay post-confirmation quarterly fees assessed pursuant to 11 U.S.C. Section I 930(a)(6) until such time as this Bankruptcy Court enters a final decree closing this chapter 11 case, or enters an order either converting this case to a case under chapter 7 or dismissing this case. After confirmation, the Disbursing Agent shall file with the Bankruptcy Court and serve on the United States Trustee a financial report for each quarter, or portion thereof, that this chapter 11 case remains open in a format prescribed by the United States Trustee.

## XV.

### CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The federal income tax consequences of the Plan are complex and are subject to significant uncertainties.  Compass Bank has not requested a ruling from the IRS or an opinion of counsel with respect to any of the tax aspects of the Plan.  Thus, no assurance can be given as to the interpretation that the IRS will adopt.  In addition, this summary does not address state, local or foreign income or other tax consequences of the Plan, nor does it purport to address the federal income tax consequences of the Plan to special classes of taxpayers (such as foreign taxpayers, broker-dealers, banks, mutual funds, insurance companies, financial institutions, thrifts, small business investment companies, regulated investment companies, tax-exempt organizations, certain expatriates, or former long term residents of the United States, or pass-through entities or investors in pass-through entities.  Holders of claims and interests are urged to consult with their own tax advisors to determine the tax consequences to each of them.

5943559v.4 100456/00387

## XVI.

### CONCLUSION

Compass Bank believes that approval of the Plan will provide the maximum realistic near term recovery to each class of Claims and Equity Interests.

This Disclosure Statement is subject to the approval of the Bankruptcy Court after notice and hearing.

Respectfully submitted this  2  day of December, 2010.

Compass Bank
By: _Carl Scott_
Carl Scott
Senior Vice President

Bruce J. Ruzinsky
Jackson Walker L.L.P.
1401 McKinney, Suite 1900
Houston, TX 77010
(713) 752-4204 Telephone
(713) 308-4155 Telecopy
ATTORNEYS FOR COMPASS BANK

5943559v.4 100456/00387