UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| SONRISA PROPERTIES, LTD. | § | |
| | § | CASE NO. 10-80012-G3-11 |
| | § | |
| DEBTOR | § | CHAPTER 11 |

# SECOND AMENDED  PLAN OF REORGANIZATION  FOR

# SONRISA  PROPERTIES,  LTD.  FILED BY THE DEBTOR

Date: February 4 , 2011

Karen R. Emmott
4615 Southwest Frwy.
Suite 500
Houston, TX 77027
(713) 739-0008 (Telephone)
(713) 481-6262 (Telecopier)

ATTORNEY FOR
SONRISA PROPERTIES, LTD.
DEBTOR

**SONRISA PROPERTIES, LTD.,** Debtor and Debtor-in-Possession herein, proposes this First Amended Plan of Reorganization.

# I.
# DEFINITIONS

The following terms and definitions shall apply throughout this Plan except where the context requires otherwise:

**"Administrative Claim"** means a Claim for any cost or expense of administration of the Bankruptcy Case under section 503(b) of the Bankruptcy Code, including, without limitation, any fees or charges assessed against the Estate of the Debtor pursuant to 28 U.S.C. § 1930, and further including a Cure Claim and a Professional Claim.

**"Administrative Claims Bar Date"** means the day that is thirty (30) days after the Effective Date.

**"Administrative Tax Claim"** means a Claim of an *ad valorem* taxing authority against the Debtor, Estate, or property of either, solely on account of year 2009 or later taxes. The term includes any Claim for *ad valorem* taxes that accrued on January 1, 2009 and that is payable by January 30, 2010 without interest. The term excludes any Claim for *ad valorem* taxes for any year prior to the year 2009, including any such Claim that became payable no later than January 31, 2009 without interest.

**"Allowed"** means, as it relates to any type of Claim provided for under this Plan, a Claim: (i) which has been scheduled as undisputed, noncontingent, and liquidated in the Schedules in an amount other than zero or unknown, and as to which: (a) no proof of Claim has been timely filed, and (b) no objection thereto has been timely filed (as determined by applicable deadlines contained in this Plan, including the Claims Objection Deadline); (ii) as to which a proof of Claim has been timely filed and either: (a) no objection thereto has been timely filed (as determined by applicable deadlines contained in this Plan, including the Claims Objection Deadline), or (b) such Claim has been allowed (but only to the extent allowed) by a Final Order of the Bankruptcy Court; (iii) which has been expressly allowed under the provisions of this Plan; or (iv) which has been expressly allowed by Final Order of the Bankruptcy Court.

**"Allowed Administrative Claim"** means: (i) an Administrative Claim that has been Allowed (but only to the extent Allowed), if approval from the Bankruptcy Court is required in order to Allow same; and (ii) an Administrative Claim which: (a) is incurred by the Debtor after the Petition Date in the ordinary course of its business operations or pursuant to an order entered by the Bankruptcy Court granting Administrative Claim status; (b) is not disputed by the Debtor, any Creditor, or the Reorganized Debtor; and (c) does not require approval from the Bankruptcy Court to become Allowed.

**"Allowed Priority Claim"** means a Priority Claim that has been Allowed (but only to the extent Allowed).

**"Allowed Secured Claim"** means a Secured Claim that has been Allowed (but only to the extent Allowed).

"**Allowed Compass National Bank Secured Claim**" means Compass National Bank Secured Claim that has been Allowed (but only to the extent Allowed).

"**Allowed Unsecured Claim**" means an Unsecured Claim that has been Allowed (but only to the extent Allowed).

"**Avoidance Actions**" means any and all rights, claims or actions which the Debtor may assert on behalf of the Estate under chapter 5 of the Bankruptcy Code, including actions under one or more provisions of sections 542, 544, 545, 546, 547, 548, 549, 550, 551, and/or 553 of the Bankruptcy Code, except to the extent that any such rights, claims, or actions are released or waived in this Plan.

"**Ballot**" means the ballot, the form of which has been approved by the Bankruptcy Court, accompanying the Disclosure Statement provided to each holder of a Claim entitled to vote to accept or reject this Plan.

"**Bankruptcy Case**" means the bankruptcy case initiated by Sonrisa Realty Partners, Ltd., in the Bankruptcy Court on the Petition Date, administered under Case Number 10-80026-G3-11.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, in effect as of the Petition Date and as may have been or may be amended or supplemented since, to the extent that any such amendment or supplement is automatically applicable to the Bankruptcy Case by operation of law and not by operation of any election or choice.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Texas, Galveston Division or, if such court ceases to exercise jurisdiction, the court or adjunct thereof that exercises jurisdiction over the Bankruptcy Case.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, together with the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time to time hereafter be amended.

"**Bar Date**" means May 5, 2010, the date set by the Bankruptcy Court for filing proofs of Unsecured Claims other than governmental Claims, and _____, 2010 with respect to governmental Claims.

"**Business Day**" means any day which is not a Saturday, a Sunday, or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

"**Claim**" means a claim against the Debtor, the Estate, and/or property of the Debtor or the Estate, as such term is otherwise defined in section 101(5) of the Bankruptcy Code, arising prior to the Effective Date.

"**Claims Objection Deadline**" means the date by which parties authorized by the Plan may file any objection to a Claim, which date shall be sixty (60) days after the Effective Date, except with respect to Administrative Claims as otherwise provided for herein.

"**Class**" means one of the categories of Claims established under Article II of the Plan.

"**Committee**" means, the Official Committee of Unsecured Creditors. In this case, no Committee was appointed by the Office of the United States Trustee.

"**Compass Bank**" means Compass Bank, which is a secured creditor of the Debtor.

"**Compass**" means Compass Bank.

"**Compass Secured Claims**" means the Secured Claims of Compass Bank.

"**Compass Secured Claim Documents**" means Promissory Note in the original principal amount of $8,200,000.00, dated February 15, 2007, executed by Sonrisa Properties, Ltd. and Sonrisa Realty Partners, Ltd. payable to Texas State Bank and the Deed of Trust dated February 15, 2007 as filed in the Real Property Records of Galveston County, and any amendments to, extensions of or modification to either of the Note or Deed of Trust or the document or agreement governing Compass Bank's secured claims and the Assignment of Leases and/or Rents dated February 15, 2007, filed in the Real Property Records of Galveston County.

"**Confirmation Date**" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

"**Confirmation Hearing**" means the hearing(s) before the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing(s) may be continued, rescheduled or delayed.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, modified, or supplemented.

"**Creditor**" means the holder of any Claim entitled to distributions with respect to such Claim.

"**Cure Claim**" shall refer to the payment or other performance required to cure any existing default under an Executory Contract in accordance with section 365 of the Bankruptcy Code.

"**Debtor**" means Sonrisa Properties, Ltd.

"**Disallowed Claim**" means, as it relates to any type of Claim provided for under this Plan, a Claim or portion thereof that: (i) has been disallowed by a Final Order of the Bankruptcy Court; (ii) is identified in the Schedules in an amount of zero dollars, unknown dollars, or as contingent, unliquidated, and/or disputed, and as to which a proof of Claim was not filed by the Bar Date; or (iii) is not identified in the Schedules and as to which no proof of Claim has been filed or deemed filed by the Bar Date, if the filing of such proof of Claim is otherwise required.

"**Disclosure Statement**" means the First Amended Disclosure Statement with respect to this Plan and the First Supplement thereto approved by the Bankruptcy Court as containing adequate information for the purpose of dissemination and solicitation of votes on confirmation of this Plan, or as it may be altered, amended, or modified from time to time

in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code and Bankruptcy Rule 3018.

"**Disputed Claim**" means any Claim or any portion thereof which is neither Allowed nor is a Disallowed Claim as of the close of the Claims Objection Deadline. In the event that any part of a Claim is a Disputed Claim, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of distribution under this Plan unless the party responsible for the payment thereof, the objecting party, and the holder thereof agree otherwise or unless otherwise ordered by the Bankruptcy Court; *provided*, *however*, that nothing in this definition of "Disputed Claim" is intended to or does impair the rights of any holder of a Disputed Claim to pursue its rights under section 502(c) of the Bankruptcy Code. Without limiting any of the foregoing, but subject to the provisions of this Plan, a Claim that is the subject of a pending application, motion, complaint, objection, or any other legal proceeding seeking to disallow, limit, subordinate, or estimate such Claim, as of the Claims Objection Deadline, shall be a Disputed Claim unless and until the entry of a Final Order providing otherwise.

"**Effective Date**" means the first Business Day fourteen (14) days after the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least fourteen (14) days after the Confirmation Date, and upon which the conditions to the Plan are satisfied.

"**Estate**" means the estate created for the Debtor pursuant to section 541 of the Bankruptcy Code and any other applicable provision thereof.

"**Equity Interests**" means the interest represented by an "equity security" as defined in section 101(16) of the Bankruptcy Code.

"**Executory Contract**" means, collectively, "executory contracts" and "unexpired leases" of the Debtor as of the Petition Date as such terms are used within section 365 of the Bankruptcy Code.

"**Final Decree**" means the final decree entered by the Bankruptcy Court on or after the Effective Date pursuant to Bankruptcy Rule 3022.

"**Final Order**" means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal having jurisdiction over the subject matter thereof which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which: (i) the time to appeal or petition for review, rehearing or *certiorari* has expired and as to which no appeal or petition for review, rehearing or *certiorari* is pending; or (ii) any appeal or petition for review, rehearing or *certiorari* has been finally decided and no further appeal or petition for review, rehearing or *certiorari* can be taken or granted.

"**Governmental Unit**" means a governmental unit as such term is defined in section 101(27) of the Bankruptcy Code.

"**Person**" means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, irrespective of whether they are governments, agencies, or political subdivisions thereof.

"**Petition Date**" means January 4, 2010.

"**Plan**" means *Sonrisa Properties, Ltd., Plan of Reorganization*, as proposed by Sonrisa Properties, Ltd., either in its present form or as it may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules, and all exhibits thereto.

"**Plan Documents**" means the documents that aid in effectuating the Plan as specifically identified as such in the Plan, which will be substantially in the form filed by the Plan Proponent with the Bankruptcy Court prior to the conclusion of the Confirmation Hearing.

"**Plan Proponent**" means the Debtor, which has prepared and seeks approval of the Plan.

"**Priority Claim**" means a Claim entitled to priority in payment under section 507(a) of the Bankruptcy Code, excluding any Claim that is an Administrative Claim.

"**Professional**" means any Person employed or to be compensated pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

"**Professional Claim**" means a Claim by a Professional for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Bankruptcy Case.

"**Property**" means approximately 102 acres cross-collateralized to Compass Bank; the Debtor, Sonrisa Realty Partners, Ltd., owns approximately 97.5 acres and the Debtor, Sonrisa Properties, Ltd., owns approximately 4 acres.

"**Rejection Claim**" means a Claim arising under section 502(g) of the Bankruptcy Code as a consequence of the rejection of any Executory Contract.

"**Reorganized Debtor**" means Sonrisa Properties, Ltd., the Debtor, after the Effective Date.

"**Schedules**" means the Schedules of Assets and Liabilities and the Statements of Financial Affairs filed by the Debtor with the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

"**Secured Claim**" means a Claim that is alleged to be secured, in whole or in part, (i) by a lien against an asset of the Debtor or the Estate to the extent such lien is valid, perfected, and enforceable under applicable non-bankruptcy law and is not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent that such Claim is secured within the meaning of section 506(a) of the Bankruptcy Code; or (ii) as a result of rights of setoff under section 553 of the Bankruptcy Code.

"**Secured Tax Claim**" means a Claim of a Governmental Unit for the payment of *ad valorem* taxes that is secured by property of the Debtor, or the Estate, but that is not an Administrative Tax Claim.

**"Sonrisa Realty Partners, Ltd."** means the Debtor in Case No. 10-80026-G3-11, United States Bankruptcy Court, Southern District TX, Galveston Division, a co-maker with the Debtor herein under a $8.2 million note and deed of trust to Compass Bank.

**"Sonrisa Properties, Ltd."** means the Debtor herein.

**"Substantial Consummation"** means the earliest day on or after the Effective Date on which the Reorganized Debtor makes the first distribution on account of Allowed Claims in any of the following Classes of Claims: (i) Class 1; (ii) Class 2; (iii) Class 3; or (iv) Class 4 or (v) 5.

**"Unsecured Claim"** means any alleged Claim that is not secured by a valid, enforceable, and unavoidable lien against any asset of the Debtor or the Estate, but excluding any Administrative Claim, Priority Claim, Secured Claim, but including a Secured Claim to the extent not an Allowed Secured Claim but otherwise an Allowed Claim.

**"Voting Deadline"** means the period established by the Bankruptcy Court within which Ballots may be cast on the Plan.

## II.
## CLASSES AND TREATMENT OF CREDITORS

**A.     Classification and Treatment of Claims.**  The Plan establishes six (6) classes for claims.  Such classes of claims and interests are outlined below.

### Class 1 - Administrative Claims - Unimpaired

Class 1 consists of all Administrative Claims against the Debtor that become Allowed Claims.  Allowed Administrative Claims include the following claims:

**U.S. Trustee Fees**

The U.S. Trustee Fees are current, and all fees accruing prior to and after confirmation will be paid in full prior to or on the Effective Date.

**Professional Fees**

Claims of Debtor's counsel, Karen R. Emmott, for representing the Debtor in this matter under Section 507(a)(1).   Karen R. Emmott has been paid a retainer of $5,127.00 and estimates that her total fees will be approximately $40,000.00 which will be subject to Court approval.  The Court has also approved the employment of a CPA whose fees at this time are unknown.

The Administrative Claims of the foregoing professional(s) will be paid in cash, in full, on the Effective Date, or as soon as practicable after such claims become Allowed Claims if the date of allowance is later than the Effective Date, or in such amounts and on such other terms as may be agreed on between the holders of such claims and the Debtor.

Any and all requests for allowance of an Administrative Claim (including Professional Fee Claims) must be filed with the Bankruptcy Court and served on the Debtor and the U.S. Trustee within thirty (30) days following the Effective Date.  Any Class 1

Claims not filed within such time period will be forever barred and will not be entitled to receive any distribution of payment under the Plan.

### Class 2 - Priority Tax Claims - Unimpaired

Class 2 consists of all Priority Tax Claims against the Debtor that are or become Allowed Claims. Class 2 is not impaired. Except to the extent that the holder of an Allowed Priority Tax Claim has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each holder a Class 2 Priority Tax Claim will receive full satisfaction of such Allowed Claim, in cash, equal to the amount of the Allowed Claim.

### Class 3 -   Secured Claims - Unimpaired  - Ad Valorem Tax Claims

Class 3 consists of the Secured Claims of the taxing authorities, secured by real property interests. The tax claims for years prior to 2010 were paid at the closing relating to the sale to Galveston County. Taxes for 2010 will not be assessed until October 2010 and are not yet due.

### Class 4 - Secured Claim of Compass Bank - Impaired

Class 4 consists of the Secured Claim of Compass Bank in the approximate principal amount of $7,100,000.00 plus accruing interest in the approximate amount of $700,000.00. The remaining principal indebtedness plus accruing interest owed to Compass will be restructured, renewed, modified, and extended over a term of 24 months beginning as of the Effective Date. Interest will be paid at an interest rate of prime plus 1.5% per annum. A loan will be made to the Debtor Sonrisa Realty Partners, Ltd., by Tanger Devco, LLC, a North Carolina limited liability company in the amount of $1,350,000.00 on the Effective Date of that Debtor's Plan. Tanger will deposit the sum of $1,350,000.00 with Chicago Title Insurance Company, Attention Jeffrey Hrdlicka II, 230 N. Eugene St., Greensboro, North Carolina 27401 together with instructions to release $1,000,000.00 to Compass Bank on the Effective Date of the Plan of Sonrisa Realty, Ltd. The $1,000,000.00 will be released to Compass Bank and applied as a principal payment on the indebtedness to Compass Bank. On the Effective Date of the Plan of Sonrisa Realty Partners, Ltd., a deposit in the amount of $350,000.00 will be made into an account at Compass Bank to establish an interest reserve to be used to pay interest as it accrues. This reserve will provide for monthly interest payments to Compass Bank. Within one year and ten days from the Effective Date of the Plan of Sonrisa's Realty Partners, Ltd., an additional $350,000.00 will be paid to Compass Bank and applied as a principal payment together with an additional $150,000.00 paid into the interest reserve account to replenish the interest reserve. Compass Bank will retain its first priority deed of trust lien and security interests in all existing collateral. The restructured loan will provide that Compass Bank will receive 100% of all future net sale sales proceeds from the remainder of the real property owned by the Debtor Sonrisa Realty Partners, Ltd., and the Debtor Sonrisa Properties, Ltd. and same will be applied as a principal reduction against the outstanding indebtedness to Compass Bank until the loan is paid in full.

Compass will forebear from taking any action to enforce its judgment against Randal Hall, Sonrisa Development, LLC, Sonrisa Realty GP, LLC (the Debtor's General Partner), and Sonrisa Properties Management, Inc., in Civil Action H-10-107, United

States District Court, Southern District of Texas, so long as the restructured loan is not in default.

### Class 5 - General Unsecured Non-Priority Claims - Impaired

The Debtor has the following unsecured creditors:

| | | |
|---|---|---|
| Affinity Bayview I, Ltd. | Disputed | Unknown |
| E. John Justema | Insider | $24,542.50 |
| Greer, Herz & Adams, LLP | | $87,639.81 |
| Halff Associates, Inc. | | $3,240.00 |
| HSM/Sonrisa, Ltd. | Insider | $97,828.54 |
| IntereDirect USA, Ltd. | | $3,187.50 |
| OE Development Partners, Ltd. | Insider | $2,872.50 |

The Debtor proposes to pay holders of allowed claims in Class 5 after payment in full to Classes 1-4. No interest will be paid. The holders of allowed claims in Class 5 will participate pro rata in quarterly distributions from sale proceeds after payment in full to Classes 1-4.

### Class 6 - Equity Interests - Impaired

The equity interest holders will not receive any payments under this Plan unless creditors in Classes 1 through 5 are paid in full the allowed amounts of their claims.

## III.
## EFFECTUATING THE PLAN

The Debtor will implement its plan through the following:

**A.   Proposed Purchase and Contract for the Sale of 35 Acres in League City, TX.**

Subject to Bankruptcy Court approval, the Debtor Sonrisa Realty Partners, Ltd., has entered into an Amended and Restated Offer to Purchase and Contract - Vacant Land (the "Amended Agreement"), which is attached hereto as **Exhibit A.** The Amended Agreement, between the Debtor, Sonrisa Realty Partners, Ltd. (as Seller) and Tanger Devco, LLC, a North Carolina limited liability company, (as Buyer) provides for the Buyer's purchase of an approximate 35 acre tract of undeveloped land located in League City, TX (the "**Property**") owned by Sonrisa Realty Partners, Ltd. The description of the Property is set forth in further detail in the referenced Exhibit A attached to the Amended Agreement. The **Study Period** will extend for one year from the Effective Date of the Plan of Sonrisa Realty, Partners, Ltd. The **Purchase Price** in the Amended Agreement is $250,000.00 per usable acre. Based on 35 usable acres the **Purchase Price** would be $8,750,000.00. The Amended Agreement provides that the **Purchase Price** will be paid as follows: an **Initial Earnest Money Deposit** in the amount of $900.00 within three days of the Effective Date of the Plan of Sonrisa Realty Partners, Ltd.; an **Additional Earnest Money Deposit** in the amount of $500,000.00 within three business days after the end of the **Study Period**, if Buyer has not terminated the Amended Agreement; and the balance of the **Purchase Price** to be paid in cash at closing, with a **Closing Date** to occur on or before the 180th day(or the next business day thereafter) after the last day of the **Study Period**.

The Amended Agreement provides for a $100.00 **Option Fee** to be paid to the Debtor Sonrisa Realty Partner, Ltd. simultaneously with the **Initial Earnest Money Deposit** and such payment to the Debtor Sonrisa Realty Partners, Ltd., shall give the Buyer the right to terminate the Amended Agreement for any reason or no reason, by 5:00 p.m. on the 365th day after the **Study Period Commencement Date**, which is the Effective Date of the Plan of Sonrisa Realty Partners, Ltd. (the **"Option Termination Date"**). If Buyer delivers a termination notice prior to the **Option Termination Date**, the Amended Agreement will become null and void and all Earnest Money received will be refunded to Buyer.

The Amended Agreement provides that the Buyer (or its affiliate) will make a **Loan** to the Debtor Sonrisa Realty Partners, Ltd., in the amount of $1,350,000.00 on the Effective Date of that Debtor's Plan. The **Loan** will be evidenced by a promissory note (the **"Note"**), bear interest at a rate of 4.75% per annum, have a term of 26 months from and after the Effective Date of the Plan of Sonrisa Realty Partner, Ltd., with principal and all accrued interest due at maturity or on the closing of the sale of the **Property**.

The **Note** will be secured by a Second Lien Deed of the Trust covering the subject **Property** and the remainder of the Debtor's Sonrisa Realty Partners, Ltd. Property, being expressly subordinate and inferior to the Compass Lien. The **Note** will be secured by a Second Lien Assignment of any right, title and interest of the Debtor Sonrisa Realty Partners, Ltd., in and to any present or future receivables from GCMD #1 relating to the **Property** and the remainder of that Debtor Sonrisa Realty Partners, Ltd.,Property and being expressly subordinate and inferior to the Compass Bank Security Interest.

Buyer will deposit the $1,350,000.00 with Chicago Title Insurance Company, Attention Jeffrey Hrdlicka, II, 230 N. Eugene Street, Greensboro, North Carolina, 27401 with instructions to release $1,000,000.00 to Compass Bank on the Effective Date of the Plan of Sonrisa Realty Partners, Ltd. to be applied as a principal payment on the Compass Loan. In the event that the Effective Date of the Plan of Sonrisa Realty Partners, Ltd. has not occurred prior to June 15, 2011, Buyer will have the right, but not the obligation, to direct that the funds deposited with Chicago Title be delivered immediately to Buyer and released from any escrow. The remaining $350,000.00 will be deposited into an account at Compass Bank to establish an interest reserve to be used to pay interest as it accrues. This reserve will provide for monthly interest payments to Compass Bank.

Within ten days from the end of the **Study Period**, an **Additional Earnest Money Deposit** in the amount of $500,000.00 will be paid by Buyer and the Escrow Agent will release to Compass Bank the **Additional Earnest Money** to be paid as follows: $350,000.00 as a principal payment on the Compass Loan and $150,000.00 to replenish the interest reserve.

The Amended Agreement provides that a **Closing** will occur on or before six months (180 days) after the last day of the **Study Period**. Compass Bank will be paid in full at **Closing**.

Approval of the Amended Agreement and of the Plan of Sonrisa Realty Partners, Ltd. will provide for the Debtor Sonrisa Realty Partners, Ltd. to sell the **Property** to the Buyer pursuant to the terms stated in the Amended Agreement, to mortgage the **Property** as stated above, and for a **Loan** to be made by the Buyer in the amount of $1,350,000.00 for the Debtor Sonrisa Realty Partners, Ltd. to (1) make a principal payment on the Compass Loan in the amount of $1,000,000.00 on the Effective Date of the Plan of Sonrisa Realty Partners, Ltd.; and (2) deposit $350,000.00 at Compass Bank on the Effective Date of the Plan of

Sonrisa Realty Partners, Ltd., to establish an interest reserve as further described in paragraph 4, above. The Amended Agreement further permits the Debtor Sonrisa Realty Partners, Ltd. to use the $500,000.00 **Additional Earnest Deposit** to (1) make a principal payment to Compass Bank of $350,000.00 within ten days after the expiration of the **Study Period**; and (2) pay Compass Bank $150,000.00 to replenish the interest reserve within ten days after the expiration of the **Study Period**. The Debtor's Plan seeks approval to extend the Compass Loan for 24 months at an interest rate of prime plus 1.5% per annum. The Debtor will pay 100% of the net sales proceeds from any sale of the Debtor's property to Compass Bank until the Compass Loan is paid in full.

The Amended Agreement provides that the Debtor Sonrisa Realty Partners, Ltd. will pay at **Closing** a **Brokerage Fee/Commission** to Brian Yates Interests, Inc. (Debtor's Broker) and Dwyer & Company Commercial Real Estate (Buyer's Broker) with such payment being 3% of the **Purchase Price** to Debtor's Broker and 3% of the **Purchase Price** to Buyer's Broker.

The Amended Agreement provides that the Buyer has the exclusive **Option** to purchase approximately 15 acres (the "**Additional Tract**") as referenced in Exhibit G attached to the Amended Agreement. The period for exercise of this **Option** will commence on the Effective Date of the Plan of Sonrisa Realty Partners, Ltd., and end on the earlier of the date which is 12 months thereafter or the termination of the Amended Agreement. This period may be extended for an additional six months ("**Extended Term**") by Buyer's payment to Debtor Sonrisa Realty Partners, Ltd., of the amount of $100,000.00 ("**Extension Fee**") which must be paid to that Debtor prior to the last day of the Initial Term. The purchase price for the **Additional Tract** is $250,000.00 per acre. Based on 15 acres the purchase price would be $3,750,000.00. The date of the **Additional Tract Closing** will be the earlier of (1) the business day specified in the written notice from the Buyer to the Debtor Sonrisa Realty Partners, Ltd., of exercise of this **Option**; (2) closing of the Amended Agreement; or (3) the date which is 18 months from and after the Effective Date of the Plan. of Sonrisa Realty Partners, Ltd.

**B.     Future Sales.**

The Debtor will continue its marketing and selling efforts for the balance of its property.  The Debtor will pay 100% of the net sales proceeds from any sale of the remainder of the Debtor's property to Compass Bank until the Compass Loan is paid in full.

## IV.
## MODIFICATION OF PLAN

The Plan may be amended or modified by the Debtor with the approval of the Court after notice and hearing. If the Court finds after hearing and notice that the proposed modification does not adversely change the treatment of the Claim of any Creditor or the interest of any equity security holder who has not accepted in writing any modification, it shall be deemed accepted by all creditors and equity security holders who have previously accepted the Plan.

## V.
## MEANS FOR IMPLEMENTING THE PLAN

Implementation of the Plan requires entry of an order by the Bankruptcy Court confirming the Plan. The Plan is to be implemented, if accepted and approved by the

Bankruptcy Court, in its entire form, from sales proceeds and from the interest reserve established for Compass Bank. As soon as feasible after the Effective Date, the provisions of the Plan providing for distributions shall become the responsibility of the Reorganized Debtor, and it shall make such disbursements as required by the Plan.

## VI.
## RESERVATION OF RIGHTS

Neither the filing of the Plan, nor any statement or provision contained herein, nor the taking by the Debtor or any Creditor of any action with respect to the Plan shall be deemed to be an admission against interest or to be deemed to be a waiver of any rights which the Debtor might have against a Creditor, and until the Effective Date, all such rights are expressly and specifically reserved. In the event that the Effective Date does not occur, neither the Plan or any statement contained therein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of the reorganization.

## VII.
## REJECTION OF EXECUTORY CONTRACTS

On the Effective Date, the Debtor shall be empowered to assume or reject, within thirty days, any and all executory contracts and leases not previously assumed. The Debtor will notify all parties affected by such a rejection by filing a written notice of rejection and serving such notice on those parties.

All parties to any contract rejected will have thirty (30) days from the rejection of their executory contract in which to file a Proof of Claim for damages, if any, resulting from rejection of the contract. Such claim will be subject to the limitation imposed by the Bankruptcy Code and all other applicable laws, rules and regulations.

## VIII.
## EFFECT OF CONFIRMATION

Upon date of the Final Order confirming Plan:

1. The provisions of the Plan shall bind the Debtor and any Creditor whether or not they have accepted the Plan;

2. Except as otherwise provided in the Plan, all of the Property of estate, including any tax attributes, shall vest in the Debtor.

## IX.
## RETENTION OF JURISDICTION BY THE COURT

After the Effective Date of the Plan, the Bankruptcy Court will continue to have jurisdiction over all matters arising under, arising out of, or relating to this Case and pursuant to and for the purposes set forth in Section 1127(b) of the Bankruptcy Code. Such jurisdiction will be exercised to

(a) insure that the purpose and intent of the Plan are carried out;

(b) consider any modification of the Plan under Section 1127 of the Bankruptcy Code before substantial consummation as defined in Section 1101(2) of the Bankruptcy

Code;

(c) hear and determine all Claims, controversies, suits and disputes against the Debtor;

(d) hear and determine all objections to claims, controversies, motions, applications, suits and disputes that may be pending at or initiated after the Effective Date;

(e) classify the Claims of any creditor and to re-examine Claims which have been allowed for purposes of voting, and to determine Objections which may be filed to Claims;

(f) hear, determine, and enforce all claims and causes of action which may exist on behalf of the Debtor or its Estate;

(g) consider and act on the compromise and settlement of any Claim against or cause of action on behalf of the Debtor or its Estate;

(h) hear and determine all controversies, suits and disputes that may arise in connection with the interpretation, execution, or enforcement of the Plan;

(i) hear and determine all requests for compensation and/or reimbursement of expenses for services rendered or expenses incurred prior to the Confirmation Date;

(j) enforce and interpret by injunction or otherwise the terms and conditions of the Plan;

(k) enter an Order closing the Chapter 11 Case;

(l) to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or Confirmation Order which may be necessary or helpful to carry out the purposes and intent of the Plan;

(m) consider and act on such other matters consistent with the Plan as may be provided in the Confirmation Order;

(n) issue orders in aid of execution and implementation of this Plan to the extent authorized by 11 U.S.C. Section 1142 or provided by the terms of this Plan; and

(o) decide issues concerning the Federal or State Tax Liability of the Debtor which may arise in connection with the confirmation or consummation of this Plan.

## X.
## RELEASES IN THE PLAN

The Plan proposes to release multiple parties, including certain insiders, the plan proponent, attorneys and others from potential liability. Most of these releases relate to actions taken in the Bankruptcy Case, and are normal in the context of chapter 11 plans.

The Plan would release the Debtor's and Estate's potential claims against such individuals. It would not release any claim that a Creditor may have against any such released individual that is "personal" or "direct" to that creditor. However, certain Creditors that may hold "personal" or "direct" Claims would be enjoined and prohibited under the Plan from asserting those Claims against third parties, as discussed below.

**ALL CREDITORS AND PARTIES ARE CAUTIONED TO STUDY THE PLAN IN DETAIL BECAUSE THE PLAN PROPOSES TO RELEASE SEVERAL PARTIES FROM LIABILITY OR POTENTIAL LIABILITY.**

## XI.
## THIRD PARTY INJUNCTIONS

All Creditors are able to pursue Claims and seek recovery only under the terms of the Plan, and not against the Reorganized Debtor, its property, or the purchaser of the Property except as provided for in the Plan.

**THE PLAN CONTAINS STRONG AND PERMANENT INJUNCTIONS THAT MAY PREVENT YOU FROM SEEKING TO ASSERT OR COLLECT YOUR CLAIM AGAINST NON-DEBTOR PARTIES. YOUR RIGHTS MAY BE SEVERELY IMPACTED. STUDY THE PLAN CLOSELY AND CONSIDER CONSULTING WITH LEGAL COUNSEL REGARDING THE PLAN AND YOUR RIGHTS AND LIMITATIONS THEREUNDER.**

The Plan contains injunctions which are commonly referred to as third party injunctions, because they enjoin a Creditor from pursuing a potential Claim against parties other than the Debtor or Reorganized Debtor. Generally, a discharge of a debtor in bankruptcy does not discharge any potential liability of a non-debtor Person on account of the discharged claim. Thus, generally, a debtor's discharge does not discharge or enjoin the ability of a creditor to sue a guarantor of the debtor's debt. A third party injunction changes this, and is permitted, in certain instances, under the Bankruptcy Code. The Plan contains third party injunctions (aside from the discharge injunction imposed by the terms of the Bankruptcy Code itself).

First, the Plan enjoins and prohibits every Creditor from seeking to collect its Claim against the Debtor and against a Person released in the Plan. This injunction provision specifically includes Compass Bank from enforcing its judgment in Civil Action H-10-107, United States District Court, Southern District of Texas, against Randal M. Hall, Sonrisa Development, LLC, Sonrisa Realty GP, LLC, and Sonrisa Properties Management, Inc. **Insiders are hereby released in the Plan, and the Creditors are hereby barred and enjoined from pursing a claim against the following so long as the Debtor is in compliance with the Plan: Randal M. Hall, Sonrisa Development, LLC, Sonrisa Realty GP, LLC, and Sonrisa Properties Management, Inc.**

**TO PREVENT THE IMPOSITION OF A THIRD PARTY INJUNCTION AGAINST YOU, YOU MAY HAVE TO OBJECT TO THE CONFIRMATION OF THE PLAN. OTHERWISE, THE BANKRUPTCY COURT MAY DEEM YOUR SILENCE TO BE YOUR CONSENT TO THE INJUNCTIONS CONTAINED IN THE PLAN, AND THE BANKRUPTCY COURT MAY PERMANENTLY ENJOIN YOU FROM TAKING ACTION.**

## XII.
## VESTING OF PROPERTY OF THE ESTATE

On the Effective Date of the Plan, all property of the Debtor and of the Estate shall vest in the Reorganized Debtor free and clear of liens, claims and encumbrances, except as otherwise provided in the Plan and other than any contractual secured claims granted under any lending agreement, on the condition that the Reorganized Debtor complies with the terms of the Plan, including the

making of all payments to creditors provided for in such Plan. If the Reorganized Debtor defaults in performing under the provisions of this Plan and this case is converted to a case under chapter 7, all property vested in the Reorganized Debtor and all subsequently acquired property owned as of or after the conversion date shall re-vest and constitute property of the Bankruptcy Estate in the converted case..

## XIII.
## CONTINUATION OF BUSINESS OPERATIONS

The Reorganized Debtor shall be authorized, from and after the Effective Date of the Plan, to continue its normal business operations and enter into such transactions as it deems advisable, free of any restriction or limitation imposed under any provisions of the Bankruptcy Code, except to the extent otherwise provided in the Plan.

## XIV.
## ACCEPTANCE OR REJECTION OF PLAN

1.  Each class of Claims shall vote separately to accept or reject the Plan.

2.  An impaired Class of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the Allowed Claims of such Class that are voted. For purposes of this section, a vote shall not be counted if under the Bankruptcy Rules it should not be counted pursuant to Section 1126(e) of the Bankruptcy Code.

3.  If any impaired Class of Claims fails to accept the Plan in accordance with Section 1126 of the Bankruptcy Code, the Debtor will request the Bankruptcy Court to confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code and hereby so moves the Court for confirmation in accordance therewith and specifically pleads that the Plan is fair and equitable to such Class.

## XV.
## MAINTENANCE OF CAUSES OF ACTION

After the Effective Date, the Reorganized Debtor may litigate any avoidance or recovery actions under sections 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code. However, the Debtor is not aware of any avoidance actions at this time and does not anticipate filing any such actions.

## XVI.
## CREDITOR ENFORCEMENT ON DEFAULT

Substantial consummation of the Plan shall occur prior to entry of a final decree and any defaults under the confirmed Plan occurring after entry of a final decree shall be a liability of the newly Reorganized Debtor.

Any Creditor remedies allowed by 11 U.S.C. Section 112(b)(4)(N) shall be preserved to the extent otherwise available at law.

In addition to any rights specifically provided to a claimant treated pursuant to this Plan, a failure by the Reorganized Debtor to make a payment to a Creditor pursuant to the terms of this Plan shall be an event of default to that Creditor. If the Reorganized Debtor fails to cure an event of default as to such payments within (30) days after service of a written notice of default from such Creditor, the Creditor may exercise any and all rights and remedies under applicable non-bankruptcy law to collect such Claim or seek such relief as may be appropriate in the Bankruptcy Court.

## XVII.
## MISCELLANEOUS PROVISIONS

1. All claims and causes of action in favor of the Debtor are reserved to be prosecuted after Confirmation.

2. Whenever the word "Confirmation" is used in this Plan, it is intended to mean that date upon which the order confirming this Plan is entered by this Court and becomes final and unappealable.

3. The manager of the Debtor's General Partner, Randal M. Hall shall act as disbursing agent.

4. The Debtor may prosecute claims after Confirmation.

5. The Debtor reserves the right to object to and/or defend against any and all claims filed in this case.

Respectfully submitted this 4th day of February, 2011.

                                        Sonrisa Properties, Ltd.

                                By: /s/ Randal M. Hall
                                        Randal M. Hall, President
                                        Sonrisa Properties
                                        Management, Inc.
                                        Its General Partner

Of Counsel:
Karen R. Emmott
4615 Southwest Frwy.
Suite 500
Houston, TX 77027
(713) 739-0008 Telephone
(713) 481-6262 Telecopy
Attorney for Debtor