IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SONRISA PROPERTIES, LTD. | § | CASE NO. 10-80012-G3-11 |
| | § | CHAPTER 11 |
| DEBTOR | § | |

### COMPASS BANK'S OBJECTION TO
### <u>DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION</u>
**(Relates to Doc. No. 105)**

TO THE HONORABLE LETITIA Z. PAUL, U.S. BANKRUPTCY JUDGE:

COMPASS BANK ("Compass"), secured creditor herein, files its Objection to the

Debtor's Second Amended Plan of Reorganization as follows:

I.     **INTRODUCTION**

1.     The Debtor, Sunrisa Properties, Ltd. ("Debtor"), filed its First Amended Plan of

Reorganization [Doc. No. 70] on November 3, 2010 (the "lst Amended Plan"). The Debtor's

First Amended Disclosure Statement [Doc. No. 69][1] (the "1st Amended Disclosure Statement")

was approved by Order dated January 4, 2011 [Doc. No. 96] (the "Order Approving Debtor's lst

Amended Disclosure Statement").

2.     The Order Approving Debtor's lst Amended Disclosure Statement ordered the

Debtor to serve the lst Amended Disclosure Statement, the lst Amended Plan, and a ballot within

five days of entry of the Order. The Debtor did not comply with this Order. Instead, on

February 4, 2011, the Debtor filed its Second Amended Plan ("2nd Amended Plan") which is

materially different than the lst Amended Plan.

---

[1]   The Debtor's original Disclosure Statement was filed April 2, 2010 [Doc No. 28]. It was scheduled for hearing
June 22, 2010 but was not approved at that time.

3.      The centerpiece of the Debtor's 2nd Amended Plan is the sale of approximately 35 acres of unimproved property for $8.75 million by Sonrisa Realty Partners, Ltd. ("Realty") to Tanger Devco, LLC ("Tanger") pursuant to an Amended and Restated Offer to Purchase and Contract – Vacant Land (the "Amended Sale Agreement").  Sonrisa Realty Partners, Ltd. also is a debtor-in-possession in Case No. 80-80026-G3-11; *In re: Sonrisa Realty Partners, Ltd.*, in the United States Bankruptcy Court for the Southern District of Texas, Galveston Division.  Under the terms of the Amended Sale Agreement, the only nonrefundable consideration to be paid by Tanger to Realty is a **$100** option fee.[2]  In exchange, Tanger would receive the right to "study" the property for at least 365 days with no binding obligation whatsoever to purchase the property (the "Study Period").  Tanger has the right to terminate the Amended Sale Agreement for up to 365 days with the only penalty being the loss of the $100 option fee.

4.      The Amended Sale Agreement also provides that Tanger will loan $1.35 million to Realty with $1 million to be paid to Compass as a principal reduction on the Effective Date, and $350,000 to be used as an interest reserve.  The loan by Tanger to the Debtor would mature 2 years after the Effective Date of the 2nd Amended Plan.  If Tanger chooses to terminate the Amended Sale Agreement within the Study Period, the Plan makes no provision for how the Tanger indebtedness will be repaid.

5.      Compass has filed its Second Amended Plan of Reorganization under the terms of which unsecured creditors are guaranteed to be paid approximately 10% of their allowed claim(s) on the effective date of the plan.  Additionally, the property will be auctioned within 120 days of the Effective Date so that Compass and other creditors will be paid quickly under its

---

[2]  Tanger's $900 earnest money is refundable.

plan as opposed to the treatment under the Debtor's 2nd Plan which does not require payment in full for two years.

## II.      THE DEBTOR HAS NOT COMPLIED<br>WITH 11 U.S.C. § 1129(a)(2)

6.      The Debtor has not complied with 11 U.S.C. § 1129(a)(2) which requires that the Debtor comply with the applicable provisions of the Bankruptcy Code.  The Debtor is unable to comply with 11 U.S.C. § 1125(a)(2), which requires the Debtor to include an approved Disclosure Statement in any solicitation of acceptance of its Plan.  The lst Amended Disclosure Statement references the lst Amended Plan filed by the Debtor.  Compass anticipates that the Debtor will argue that the terms of the 2nd Amended Plan are not materially different from the 1st Amended Plan.  However, any such argument is plainly incorrect.

7.      The Debtor's 2nd Amended Plan is materially different from the Debtor's 1st Amended Plan.  For instance, the 2nd Amended Plan provides for a $1.35 million loan to Realty by Tanger (the 1st Amended Plan provided for a loan of interest only by a different party to the Debtor and Realty).  Additionally, the Amended Sale Agreement with Tanger (incorporated into the 2nd Amended Plan) is contingent on the Realty obtaining an agreement with TxDOT, and includes an option for the purchase of an additional 15 acres by Tanger which the original agreement did not include.  None of this is disclosed in the 2nd Amended Disclosure Statement.

8.      However, even if the Court determined that the 1st Amended Disclosure Statement does constitute adequate disclosure for the 2nd Amended Plan, the Order Approving Debtor's 1st Amended Disclosure Statement required the Debtor to serve the Plan and Disclosure Statement within five days of the Order.  This apparently was never done.

9.      Additionally, the Debtor has failed to file monthly operating reports as required by 11 U.S.C. § 704(a)(8), Bankruptcy Rule 2015(a)(3), and LBR 2015.3.  The only monthly

operating reports filed in this case (January – September, 2010) were all filed on October 27, 2010.[3]  Debtor has failed to file any operating reports whatsoever since that date.

10.     Further, Compass alleges on information and belief that the Debtor has violated at least one Court order, used cash collateral without authorization, and/or loaned funds outside the ordinary course of business.  The Debtor sold property post-petition:

    17.849 acres pursuant to an Order Authorizing the Sale of Real Property entered March 31, 2010 [Doc. No. 27] (the "March 31, 2010 Sale Order").

The March 31, 2010 Sale Order provides that after payment of approved expenses, the net sales proceeds were to be deposited into the Debtor's debtor-in-possession account to be used for a ramp reversal project.

11.     Compass alleges on information and belief that the gross sales proceeds attributable to the Debtor's 17.849 acres was in excess of $2 million.  Compass alleges in information and believe that $150,000 of the sale proceeds may have been loaned to Realty for payment of pre-petition property taxes owed to Realty.  There is a reference in the April Operating Report of Realty to a post-petition loan by the Debtor in the amount of $150,000.  No Court approval was obtained for this loan, and it is not disclosed in the Debtor's Operating Reports.  Compass additionally alleges on information and belief that the Debtor may have in effect also loaned Realty $1,020,000 which was paid to a management district for a ramp reversal project.  There is no authorization for either of these actions.

III.    **COMPASS DOES NOT RECEIVE UNDER THE 2ND AMENDED PLAN WHAT IT WOULD RECEIVE IN A CHAPTER 7 PROCEEDING**

12.     Pursuant to the March 31, 2010 Sale Order, the lien of Compass attached to the sales proceeds to be held by the Debtor in the debtor-in-possession account (which have been

---

[3]   These 9 late filed MOR's were all filed the day before the October 28, 2010 hearing on the Debtor's first Amended Disclosure Statement.

paid to the Galveston County Management District No. 1). While the 2nd Amended Plan provides that the lien of Compass will be retained on all assets, it does not restrict the Debtor's use of such funds so that the lien is rendered meaningless and does not provide any mechanism for Compass to obtain those funds. Similarly, the Plan effectively deprives Compass of its lien on the MUD receivables for the same reasons.

IV.    <strong>THE PLAN IS NOT FAIR AND EQUITABLE</strong>

13.    The 2nd Amended Plan may not be crammed down on Compass, assuming for purposes of argument that an impaired class of creditors has accepted the plan. The Plan is not fair and equitable as required by 11 U.S.C. § 1129(b)(2)(A)(i). Compass will not receive deferred cash payments totaling at least the allowed amount of its allowed claim as of the Effective Date of at least the value of the interest of Compass in the Property for the following reason:

> The proposed interest rate (prime plus 1½%) is not a market rate given the risk inherent in this transaction and the other terms of the 2nd Amended Plan, including but not limited to: (1) no requirement of amortization other than the first payment of $1 million on the Effective Date and $350,000 one year thereafter, (2) no demonstrable source of repayment of the loan by the Debtor; and (3) the Plan does not retain all loan covenants as provided in the loan documents (the Plan specifies that it will be renewed, modified, extended but does not state how).

14.    The 2nd Amended Plan also does not provide Compass with the indubitable equivalent of its claim because of the manner in which payments are to be applied. State law is determinative of the amount of its claim. *See Travelers Cas.& Sur. Co. of America v. Pac. Gas & Elec. Co.,* 549 U.S. 443, 450-51, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007)(recognizing that the "basic federal rule in bankruptcy is that state law governs the substance of claims.") "Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simple because an interested party is in a bankruptcy proceeding." *Id,*

quoting *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, L.Ed.2d 136 (1979).

Accordingly, Compass is entitled to application of any payments made by the Debtor according

to the loan documents which require that payments be applied first to interest, cost, fees, and

expenses.

15.     Additionally, Compass is entitled to interest on any unpaid interest, costs,

attorneys' fees and expenses which have accrued since acceleration.  Compound interest is not

usurious under Texas law and is allowed on matured interest at the highest rate allowable by

law". *Bair Chase Property Co. v. S & K Dev. Co*., 260 S.W.3d 133, 141 (Tex.App.-Austin

2008).  This rule has been applied in the context of a bankruptcy proceeding:  "Interest which has

matured may bear interest at the highest lawful rate, which is 18% in the instant dispute." *In re

Perry*, 425 B.R. 323, 364 (Bkrtcy.S.D.Tex., 2010).  The loan documents in this case provide for

unpaid accrued interest to bear interest.  The fact that the charging of interest on accrued unpaid

interest may lead to a higher effective rate than 18% does not prohibit the compounding.  *Id* at

364-65.

16.     Compass is entitled to interest after acceleration of the notes at the rate specified

in the note which is 18%, the highest rate allowed by law.  In determining what interest  applies,

the Fifth Circuit maintains, that "when an oversecured creditor's claim arises from a contract, the

contract provides the rate of post-petition interest." *Bradford v. Crozier (In re Laymon)*, 958

F.2d 72 (5th Cir. 1992).  Under *Laymon*, "oversecured creditors are entitled to their contract rate

of interest under § 506(b), and may be entitled to their default rate of interest subject to the

equities of the case." *In Re Yazoo Pipeline Co., L.P.,* 2009 Bankr. LEXIS 2599, 2009 WL

2857863 (Bankr. S.D. Tex. Aug. 31 2009)(citing Deborah A. Crabbe, *Should An Oversecured

Creditor Be Entitled to Post-Petition Interest At the Default Rate?,* 17 AM. BANKR. INST. J. 8

(March 1998)).  The default rate presumptively applies, but the party opposing the default rate can overcome that presumption by demonstrating that the equities demand pre-default contract rate.  *Yazoo,* 2009 Bankr. LEXIS 2599, citing *Southland Corp. v. Toronto-Dominion (In re Southland)*, 160 F.3d 1054, 1059 (5th Cir. 1998).  The default rate is generally allowed, "unless the higher rate would produce an inequitable result."  *Id.*  In this case, Debtor asserts there are no unsecured creditors (other than an insider).  As such, it would <u>not</u> be inequitable for Compass to receive default rate of interest.

17.    The 2nd Amended Plan also does not provide Compass with the indubitable equivalent of its claim.  The Plan provides for certain payments to be made to administrative claimants.  Compass alleges on information and belief that any funds available to pay those claims constitute its cash collateral.  As a result, Compass will lose its lien on such funds.

18.    Additionally, the 2nd Amended Plan provides that $350,000 of any subsequent earnest money received from Tanger[4] will be used to fund the interest reserve for the second year of the 2nd Amended Plan.  The earnest money will constitute the cash collateral of Compass.  The use of Compass' own cash collateral to fund an interest reserve for accrued interest deprives it of the indubitable equivalent of its claim.

### V.    THE 2ND AMENDED PLAN IS NOT FEASIBLE

19.    The 2nd Amended Plan is not feasible because Tanger is not contractually bound to buy the property.  The Plan is based on the premise that the sale to Tanger will close.  The 2nd Amended Plan provides that the second year $150,000 interest reserve will be funded and the second principal payment of $350,000 will be funded with the earnest money to be paid by Tanger.  2nd Amended Plan at III.A, p. 90.  However, Tanger is only required to pay a $100

---

[4]   Tanger is only obligated to pay the additional earnest money if it has not terminated the Amended Sale Agreement by one year after the Effective Date.

option fee and $900 in initial earnest money under the Amended and Restated Offer.  Exhibit "B", 2nd Amended Plan at p. 1.  Tanger may terminate the Amended Sale Agreement for any reason prior to the end of the one year Study Period with the only penalty being the loss of the $100 option fee.  There is real risk that Tanger will terminate the Amended Sale Agreement under these circumstances.  If Tanger terminates the Option Agreement before the end of the one year Study Period, the Debtor will be unable to fund the $150,000 interest reserve and to pay Compass $350,000 in the form of a principal reduction.  Similarly, the 2nd Amended Plan is also not feasible because the loan by Tanger and the "new" note to Compass will mature two years after the effective date.  If Tanger does not purchase the property, it is highly unlikely that the Debtor would have the reserves to pay in excess of $80.5 million.

20.     Additionally, Section 25 of Exhibit "B" to the Amended Sale Agreement requires the Debtor to obtain an agreement with TxDOT to move an off-ramp.  The agreement with TxDOT must be obtained by the Debtor at least 60 days before the end of the Study Period.  Additionally, the off-ramp must be constructed no later than an unspecified date agreed upon by the Debtor and Tanger.  If these conditions are not met, Tanger can terminate the Amended Sale Agreement with impunity.  Therefore, it is really uncertain that the sale to Tanger will close and the Plan can be effectuated.

21.     The 2nd Amended Plan is also not feasible because Compass alleges on information and belief that Tanger may be a single asset entity and/or may not have sufficient resources to fund the sale notwithstanding it may be affiliated with a public company.  The public company is not a guarantor of Tanger's obligation to the Debtor.

22.     Lastly, the 2nd Amended Plan is not feasible because it provides that the Debtor may sell the remainder of its property with the net proceeds to be paid to Compass, but contains

no mechanism for determining the release price for any piece of property.  The Debtor cannot

have the unilateral right to sell portions of the collateral of Compass without its consent.  The

2nd Amended Plan provides no means for resolving any dispute for determining the sale price of

any piece of such property.

VI.    **THE 2ND AMENDED PLAN IMPERMISSIBLY CONTAINS
RELEASES AND A THIRD PARTY INJUNCTION**

23.    Randall Hall, a principal of the general partner of the Debtor, personally

guaranteed the indebtedness owed by the Debtor to Compass.  On June 4, 2010, Compass

obtained a Final Judgment against Randall Hall, Sonrisa Realty GP, L.L.C., general partner of

the Properties, and Sonrisa Properties Management, Inc., the general partner of Debtor, in the

amount of $8,725,460.73, together with per diem interest of $954.85 from March 25, 2010 to

May 28, 2010, attorney's fees in the amount of $20,000.00, and post-judgment interest in the

lawsuit styled *Compass Bank, successor in interest to Texas State Bank v Randall M. Hall,*

*Sonrisa Development, L.L.C., Sonrisa Realty GP, L.L.C. & Sonrisa Property Management, Inc.*,

Civil Action No. H-10-0107, in the United States District Court for the Southern District of

Texas, Houston Division (the "Judgment").  Since that time, Compass obtained an order

compelling Mr. Hall to respond to post-judgment discovery and has deposed Mr. Hall.

24.    The 2nd Amended Plan impermissibly contains a release of claims the Debtor as

the Estate's claims agreement "certain insiders, the plan proponent, attorneys, and others."  2nd

Amended Plan at p. 13.  It also would enjoin Compass from taking action against any released

party.  2nd Amended Plan at p. 14.  The third party injunction would permanently enjoin

Compass from executing on the Judgment.  That is impermissible under established Fifth Circuit

precedent.

25.     The Fifth Circuit has held that a §105 injunction which would effectively discharge debts of non-debtors must be overturned.  *In re Zale Corp.*, 62 F.3d 746, 760 (5th Cir. 1995).  The Fifth Circuit noted that third party injunctions which have been upheld channeled those claims to assets of non-debtors and thereby avoided discharging non-debtors and involved asbestos claims.  *Id.*  The injunction in this case does not have that type of provision and is unenforceable.

26.     The Fifth Circuit recently noted that Fifth Circuit precedent "seem[s] to broadly foreclose non-consensual non-debtor releases and permanent injunctions."  *In re Pacific Lumber*, 584 F.3d 229, 252 (5th Cir. 2009).  The 2nd Amended Plan violates the precedent by including the injunction against Compass.

## VII.    THE 2ND AMENDED PLAN HAS NOT BEEN PROPOSED IN GOOD FAITH

27.     This is a single asset unimproved real estate case.  The Debtor has sold more than 75% of its property and only owns approximately 5 acres of unimproved land.  Compass alleges on information and belief that the sale of the remaining acreage in the near future is extremely remote.  This Debtor is hopelessly insolvent, owing in excess of $8 million.  The Debtor's plan is dependent on the sale of property by a third party, Realty.  The Debtor does not in effect have a plan of reorganization, since it has no active involvement in post-petition activities.  The 2nd Amended Plan in substance as an injunction to prevent Compass from foreclosing on its collateral for two years.  Mr. Hall has attempted to use the case for his own personal benefit through the failed attempt at a TRO to enjoin Compass from enforcing the Judgment to the continued efforts to obtain an injunction and a release.  The only interests which would be served by the confirmation of the Debtor's Plan would be the personal interests of Mr. Hall.  The 2nd Amended Plan impermissibly makes Compass bear all risks of the Debtor's 2nd Amended Plan.

- 10 -

WHEREFORE, PREMISES CONSIDERED, Compass prays that its objection be sustained and for such other and further relief to which it may be justly entitled.

SIGNED and DATED this 8th day of February, 2011.

Respectfully submitted,

By:/s/ *Lisa A. Powell*
      Lisa A. Powell
      State Bar No. 16204215
      JACKSON WALKER  L.L.P.
      1401 McKinney, Suite 1900
      Houston, Texas  77010
      (713) 752-4246
      (713) 308-4221 (Fax)
      lpowell@jw.com
      **ATTORNEYS FOR COMPASS BANK**

## CERTIFICATE AND VERIFICATION OF SERVICE

I hereby certify and verify that on this 8th day of February, 2011, a true and correct copy of the foregoing "Compass Bank's Objection to Debtor's Second Amended Plan of Reorganization**,**" was transmitted via the ECF system to the following:

**DEBTOR'S COUNSEL**
Karen R. Emmott
4615 Southwest Freeway, Suite 500
Houston, Texas 77027

**U.S. TRUSTEE:**
Ellen Maresh Hickman
Office of the United States Trustee
515 Rusk Avenue, Suite 3516
Houston, Texas  77002

US Trustee
Office of the US Trustee
515 Rusk Avenue, Suite 3516
Houston, TX  77002-2604

/s/ *Lisa A. Powell*
Lisa A. Powell

- 11 -